UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ALLSTATE INSURANCE COMPANY, *et al.*,

                      Plaintiffs,

vs.

OBTEEN N. NASSIRI, D.C, *et al.*,

                      Defendants.

Case No. 2:08-cv-00369-JCM-GWF

**ORDER**

**Motion to Strike Aaron Patterson - #322**

      This matter is before the Court on Defendants Albert Noorda, M.D. and Maryland Medical Center's ("Noorda Defendants") Motion to Strike Aaron Patterson As An Expert Witness and Preclude His Opinions on Damages At Trial (#322), filed on May 31, 2011; Plaintiffs' Response to the Motion to Strike (#333), filed on June 16, 2011; and the Noorda Defendants' Reply to Plaintiffs' Response to the Motion to Strike (#335), filed on June 27, 2011. The Nassiri Co-Defendants filed a Joinder to the Noorda Defendants' Motion to Strike (#325) on June 6, 2011. The Court conducted a hearing in this matter on July 5, 2011.

## FACTUAL BACKGROUND

      Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Company and Allstate Indemnity Company ("Allstate") allege that the Defendants provided unreasonable, unnecessary and/or fraudulent chiropractic or medical treatment to numerous patients/claimants who were injured in automobile accidents with Allstate insureds. Allstate alleges that it paid inflated settlement payments because of Defendants' improper chiropractic and medical services and billings. *Complaint (#1)*, ¶¶ 19-114. Allstate seeks to recover the amount that it paid on each claim that was in excess of what the reasonable value of the claim would have been, but for

Defendants' wrongful conduct. Allstate has limited its damages claims in this case to 157 underlying bodily injury claims. All of the claimants received chiropractic treatment from the Nassiri Defendants. Forty-five (45) of the claimants also received diagnostic or other medical services from the Noorda Defendants, generally upon referral from the Nassiri Defendants.

Allstate retained Craig S. Little, D.C., a chiropractic physician, to review the claimants' chiropractic and medical treatment records and bills and to provide expert opinions whether the treatment and charges were reasonable and necessary. Dr. Little provided his report to Allstate on August 13, 2010. As part of his report, Dr. Little prepared a chart which listed the total chiropractic or medical expenses for each claimant together with the substantially lower amounts that Dr. Little believes were reasonable. Allstate stated in its February 14, 2011 Disclosure of Expert Witness Testimony ("Expert Witness Disclosure") that Dr. Little is expected to testify consistent with his reports that chiropractic and medical treatment records revealed a pattern of misleading clinical information, grossly exaggerated clinical findings, reports of diagnoses that were not supported within reasonable medical probability, modes of care that were [not] supported as medically necessary, clearly excessive chiropractic treatment, unreasonable charges for chiropractic treatment that included gross misrepresentation in billing for actual services, and inappropriate referrals for diagnostic imaging and consultive evaluation. *See Motion to Strike (#322), Exhibit E, pp. 2-3.*

Allstate relies on Dr. Little's opinions as the foundation for determining what the reasonable settlement value of the claims should have been. The reasonable value of a bodily injury claim, however, includes not only the amount of the claimant's reasonable and necessary chiropractic and medical expenses, but also includes the value of the claimant's general damages for pain and suffering, as well as special damages for lost income, if applicable. According to its May 11, 2011 supplemental interrogatory responses, Allstate has used two methods to determine the reasonable settlement value of the claims. For any underlying claim that settled for less than policy limits, Allstate states that Aaron Patterson used a formula that was created by Allstate to determine the amount of overpayment:

> Specifically, the amount of overpayment is the difference between 1) the amount of the actual settlement and 2) the smaller amount that Allstate should have paid. The amount that Allstate should have paid

> was determined by calculating the ratio of the amount of the actual settlement and the amount that Allstate had determined to be the allowed expenses at the time the claim was initially settled, then multiplying that ratio by the amount that Allstate's expert, Dr. Little, opined was the amount of the reasonable expenses.

*Defendants' Motion (#322), Exhibit A, Plaintiffs' Second Supplementary Response to Defendant Maryland Medical Center, LLC's First Set of Interrogatories* (served on May 11, 2011), *p. 3.*

For any underlying claim that settled for policy limits, Mr. Patterson personally reviewed each claim to determine the amount that Allstate should have paid by evaluating: the amount of reasonable, necessary chiropractic and medical expenses as determined by Dr. Little, the force and nature of the collision, the fault for the collision, the extent of property damage, whether there was any emergency care, whether there were any delays in treatment, the type of treatment received, the claimants' responses to that treatment, the information that Allstate has learned in its investigation since that time, the credibility and likeability of the witnesses and parties, and other factors that pertain directly to the presentation of the claim to a jury. The amount that Allstate should have paid is then subtracted from the amount of the actual settlement, and the result is the amount of overpayment. Allstate explains that "[t]he reason that Allstate used this alternative approach for cases that settled for policy limits is that when a case settles for policy limits the amount of the settlement may not have been a true valuation of the case. It may simply have been all the money that was available." *Id., pp. 3-4.*

Mr. Patterson prepared a Damages Spreadsheet which sets forth in columns for each claim: (1) the total expense allowed, (2) the settlement amount, (3) the applicable policy limits, (4) the reasonable chiropractic expense per Dr. Little, (5) the reasonable referral and other reasonable costs (which would include the charges by the Noorda Defendants), (6) the amount Allstate should have paid, and (7) Allstate's damages, i.e. the difference between the settlement amount and the lower amount Allstate believes it should have paid. *Motion (#322), Exhibit C.* According to this Spreadsheet, the total overpayment for all 157 claims is $1,378,107.38.

It appears from the Spreadsheet that 38 of the claims settled for policy limits and were therefore evaluated by Mr. Patterson under the second method for determining the amount of overpayment. Allstate's counsel represented at the hearing on this motion that neither Allstate nor

Mr. Patterson have any notes, memoranda or other documents besides the Spreadsheet pertaining to how Mr. Patterson calculated or determined the alleged overpayments. Allstate has also not provided any information regarding the creation of the formula for determining the actual value of claims that settled for less than policy limits. It is not even clear whether Mr. Patterson created this formula or what input, if any, he had in its creation.

The chronology of events relating to Allstate's damages computation and the opinions of its damages witnesses are pertinent to the resolution of this motion. On August 15, 2010, the Nassiri Defendants filed a motion to strike Allstate's damages claim based on its failure to provide a damages computation as required by Fed.R.Civ.Pro. 26(a)(1)(A)(iii). *See Motion to Strike Plaintiffs' Claim for Damages (#211)*. Shortly after that motion was filed, Allstate disclosed Dr. Little as its expert witness and provided his reports to the Defendants. In response to Defendants' motion, Plaintiffs' counsel also prepared an estimated computation of Allstate's damages.[1] This, in turn, led Defendants to file a motion to disqualify Allstate's counsel on the grounds that he would now be a trial witness for Allstate regarding its calculation of damages. *See Motion to Disqualify (#254)*, filed on November 29, 2010.

During the November 30, 2010 hearing on Defendants' Motion to Strike Plaintiffs' Claim for Damages, Plaintiffs' counsel, Bruce Kelley, stated that Aaron Patterson, an employee of Allstate, would testify at trial regarding the calculation of Plaintiffs' damages for overpayment of the underlying claims. Although Allstate had previously disclosed Mr. Patterson as a witness, it had not specifically identified him as Allstate's damages witness. Mr. Kelley stated that Mr. Patterson's testimony would be independent of counsel's computation of Allstate's estimated damages. Mr. Kelley also stated that Plaintiffs would revise their damages computation once they

---

[1] On September 21, 2010, the Court granted the parties' Fourth Amended Stipulated Discovery Plan and Scheduling Order (#243), which extended the deadline for disclosing expert witnesses to February 16, 2011; extended the deadline for disclosing rebuttal experts to March 15, 2011, and extended the deadline for completing all discovery to April 15, 2011. Due to the parties' inability to complete discovery prior to this deadline, the Court has since granted further extensions of the discovery cutoff date. *See Order #299 and Minutes of Proceedings, #289, #292, #304, and #315*.

had reviewed the complete patient files that had recently been produced by the Nassiri Defendants. *See Order (#259), December 16, 2010, pp. 3-4.* In its order denying the Defendants' motion to strike Plaintiffs' damage claims, the Court stated:

> Plaintiffs must, however, act diligently to complete their expert analysis of the subject claims, provide their experts' reports and a final damages computation. If Plaintiffs fail to do so by the expert disclosure deadline, then a motion to preclude them from introducing damages evidence at trial will likely be granted. Plaintiffs should also be aware that the type of speculative damages computation provided by Plaintiffs' counsel on August 17, 2010 is not adequate.

*Order (#259), p. 8.*

On January 11, 2011, the Noorda Defendants filed a motion for an order authorizing them to take two full days, February 9 and 10, 2011, for the deposition of Allstate's person most knowledgeable ("PMK"). The Defendants' notice of deposition listed 58 topics on which they intended to depose Allstate's PMK. *Motion (#261), Exhibit 1.* The topics did not include Allstate's computation of its damages. The Court granted the Noorda Defendants' motion on February 7, 2011. *Minutes of Proceedings (#272).*

On January 24, 2011, Allstate served its Fourth Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1). This disclosure stated that Mr. Patterson would testify "as to the calculation of Allstate's damages in this case." *Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312), Exhibit 7, p. 2.* The Fourth Supplement also listed numerous factors that are or may be considered in determining the value of a bodily injury claim. After listing these factors, the Fourth Supplement stated:

> Although Plaintiffs cannot enumerate every specific fact that is looked upon in each and every claim identified, it is Plaintiffs' hope that the above list will be of assistance to the Defendants. Furthermore, Plaintiffs would be more than happy to address any further questions regarding this subject at the deposition of **Aaron Patterson, who is the Person Most Knowledgeable for ALLSTATE as to this issue**.

During the PMK deposition on February 9th and 10th, the Noorda Defendants' counsel questioned Mr. Patterson about the Spreadsheet. Defendants assert, however, that they did not have an opportunity to thoroughly examine Mr. Patterson about the damages computation. As of the dates of that deposition, the expert witness disclosure deadline had not expired (it expired on

February 16th) and Allstate had not formally designated Mr. Patterson as its expert witness on damages.  Nor had Allstate produced a report by Mr. Patterson, or, conversely, informed Defendants that no report would be forthcoming.

In its Expert Witness Disclosure served on February 14, 2011, Allstate listed Aaron Patterson under a heading entitled "Non-Retained Expert Witnesses." The Expert Witness Disclosure further stated:

> Aaron Patterson is expected to testify as to the facts and circumstances surrounding the subject litigation.  He will testify as to his general knowledge regarding the policies and procedures to be used in investigation, handling, evaluation and settlement of claims by ALLSTATE, and specifically the Special Investigations Unit ("SIU").  Additionally, he will testify as to the training of ALLSTATE personnel in the SIU regarding same.  He will further testify as to his general knowledge of the tools available to ALLSTATE personnel in performing the above tasks as well as how said tools are used. **In addition, he will also testify as to the calculation and amount of ALLSTATE'S damages in this matter**.
>
> Specially, with regard to the tools available to ALLSTATE personnel to perform the above described tasks, Mr. Patterson will testify as to the importance of medical records and the reliance that ALLSTATE personnel are required to place on those records.  He will also testify as to how ALLSTATE'S duties to its insureds affect the investigation, handling, evaluation and settlement of claims.
>
> **Attached as Exhibit "E" is ALLSTATE'S "Damages Spreadsheet", which illustrates and summarizes ALLSTATE'S damages in this case**.  (Emphasis added)

*Motion to Strike (#322), Exhibit E, p. 3.*

On February 17, 2011 and March 30, 211, Allstate served its Fifth and Sixth Supplements to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1). *Motion to Strike (#322), Exhibits B and F.* Under "Witnesses," Allstate set forth the same information regarding Mr. Patterson that was set forth in its February 14, 2011 Expert Witness Disclosure. *Id. p. 2.* The Fifth and Sixth Supplements also set forth the same information contained in the Fourth Supplement regarding the method that Mr. Patterson and Allstate used to determine the settlement value of the underlying claims.

On April 15, 2011, the Noorda Defendants filed an Emergency Motion for Leave to Take the Deposition of Aaron Patterson as Percipient Witness (#293).  The Noorda Defendants argued

that while they had deposed Mr. Patterson in his capacity as Allstate's PMK on February 9 and 10, 2011, the PMK deposition topics did not include Allstate's calculation or computation of damages. Defendants also argued that Allstate did not disclose Mr. Patterson as a witness on the issue of damages until February 17, 2011 when it served its Fifth Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1). *Emergency Motion (#293), pp. 3-4.* As stated above, however, Allstate had formally disclosed Mr. Patterson as a lay witness on damages on January 24, 2011. (He had also been "informally" disclosed as Allstate's damages witness during the November 30, 2010 hearing). Allstate had also disclosed Mr. Patterson as a "non-retained expert witness" on the issue of damages in its February 14, 2011 Expert Witness Disclosure.

Allstate opposed the Noorda Defendant's motion on the grounds that Defendants had known for many months that Mr. Patterson was Allstate's witness on damages, that Allstate had provided the Damages Spreadsheet to Defendants two weeks before the PMK deposition and that the Noorda Defendants' counsel had, in fact, questioned Mr. Patterson about the Spreadsheet during the PMK deposition. Although Allstate's counsel acknowledged that Defendants' counsel did not fully explore Mr. Patterson's opinions about the damages calculation during the deposition, he argued that it was Defendants' counsel's fault in failing to do so, and Defendants were not entitled to another opportunity to depose Mr. Patterson on the damages issue. *See Plaintiffs' Response to Emergency Motion (#300).*

During the April 27, 2011 hearing on the Noorda Defendants' emergency motion, the Court stated that Mr. Patterson is an expert witness on the issue of damages rather than a "percipient witness." Although there was discussion as to whether Allstate was required to provide a written expert report prepared and signed by Mr. Patterson, there was no pending motion in this regard and the Court did not decide that question. The Court, instead, decided that the Noorda Defendants should be granted three (3) additional hours to question Mr. Patterson about the damages computation so long as they agreed not to file a motion to disqualify Mr. Patterson based on Allstate's alleged failure to comply with Rule 26(a)(2)(B). (I.e., the Court would not permit Defendants to further depose Mr. Patterson and at the same time allow Defendants to move to disqualify him for not providing a written report.) The Defendants subsequently decided not to

take Mr. Patterson's deposition and, instead, filed the instant motion to disqualify Mr. Patterson based on Allstate's failure to comply with Rule 26(a)(2)(B).

## DISCUSSION

The primary question on this motion is whether Allstate's expert witness Aaron Patterson was required to provide a written report containing a complete statement of his opinions and the basis and reasons therefore in compliance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. The secondary question is what remedies, whether by sanctions or additional discovery, should the Court provide regarding to Mr. Patterson's expert testimony on damages.

Rule 26(a)(2)(A) requires a party to disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Rule 26(a)(2)(B) further provides that unless otherwise stipulated or ordered by the court, "the disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." The report must contain a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered by the witness in forming them, and any exhibits that will be used to summarize and support them. In addition, information must be provided regarding the witness's qualifications, publications, previous cases in which the witness has testified as an expert witness, and the compensation to be paid to the expert for his or her study and testimony in the case.

Pursuant to the 2010 amendment to Rule 26(a)(2), which became effective on December 1, 2010,[2] a new subsection (C) was added to the rule. It provides as follows:

> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

---

[2] The 2010 amendment "is to be applied in all cases pending at the time of its enactment to the extent that doing so is 'just and practicable.'" *Meredith v. International Marine Underwriters*, 2011 WL 1466436, at *7, (D.Md. April 18, 2011), citing 2010 U.S. Order 27 (C.O. 27). *See also Carrillo v. Lowe's HIW, Inc.* 2011 WL 2580666 (S.D.Cal. June 29, 2011).

|  |  |  |
|---|---|---|
| | (i) | the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703 or 705; and |
| | (ii) | a summary of the facts and opinions to which the witness is expected to testify. |

The 2010 Advisory Committee Notes regarding Rule 26(a)(2)(C) state that "[t]his amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B)." The Note further states:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness, and also provide expert testimony under Evidence Rule 702, 703 or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 2(a)(2)(C).

Federal case law is divided on the question of whether an employee expert witness should be required to comply with Rule 26(a)(2)(B) where his testimony is based on facts or data he obtained and reviewed specifically for the purpose of testifying at trial, notwithstanding that the employee's duties do not regularly involve giving expert testimony. The conflicting views are represented by the decisions in *Day v. Consolidated Rail Corp.*, 1996 WL 257654 (S.D.N.Y. 1996) (requiring an expert report) and *Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D.Wash. 1999) (holding that no report is required under the plain language of the rule).

In *Day v. Consolidated Rail Corp.*, the defendant disclosed an employee expert witness who would testify about track inspection requirements. The defendant argued that witness was not required to provide a report pursuant to Rule 26(a)(2)(B) because his employment duties did not regularly involve giving expert testimony and he was not retained or specially employed to provide expert testimony in the case. The court stated that the principal difficulty with this argument was that it created a distinction seemingly at odds with the rule's evident purpose of promoting full pre-trial disclosure of expert information and "would create a category of expert trial witnesses for whom no written disclosure is required–a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy." *Day*, at *2. The court

stated that in a case in which the witness is being called solely or principally to offer expert testimony there is little justification for construing the rules as excusing the report requirement. The court further stated that since the witness's employment duties did not normally involve giving expert testimony, "he may fairly be viewed as having been 'retained' or 'specially employed' for that purpose." *Id.* at *3.

In *Prieto v. Malgor*, 361 F.3d 1313 (11th Cir. 2004), the Eleventh Circuit agreed with *Day's* analysis. The plaintiff in *Prieto* sued police officers for the alleged use of excessive force during his arrest. At trial, the defense was permitted to call Officer Rodriguez to testify as an expert on police procedures and the use of force. The defendant had identified Rodriguez as a witness on the use of force, but had not expressly identified him as an expert witness or provided a report in compliance with Rule 26(a)(2)(B). The court held that the rule does not exclude or exempt from the report requirement employee witnesses called solely or principally to offer expert opinion testimony. The court further explained:

> Rodriguez had no connection to the specific events underlying this case apart from his preparation for trial. He merely reviewed police reports and depositions provided by counsel and offered expert opinions on the level of force exhibited by [plaintiff] and the appropriateness of the officers' response. . . . In other words, he functioned exactly as an expert witness normally does, providing a technical evaluation of evidence he has reviewed in preparation for trial. Because he had no direct, personal knowledge of any of these facts, his role was simply not analogous to that of a treating physician, the example offered by the Advisory Committee of an employee exempt from the written report requirement. Fed.R.Civ.Proc. 26 advisory committee's note.

*Id.* 361 F.3d at 1318-19.

Several district court decisions, including some in the Ninth Circuit, agree with the position set forth in *Day* and *Prieto*. This interpretation has been referred to as the majority view. *See Hardin v. Wal-Mart Stores, Inc.*, 2010 WL 3341897, *4 (E.D.Cal. 2010); *Funai Elec. Co. v. Daewoo Elec. Corp.*, 2007 WL 108973 at *5 (N.D.Cal. 2007); *McCulloch v. Hartford Life and Acc. Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004); *National Railway Passenger Corp. v. Railway Express, LLC*, 268 F.R.D. 211, 215 (D.Md. 2010); *Minn. Mining and Mfg. Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459, 460 (D.Minn. 1998); *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 689

(M.D.Ala. 2000); and *Dyson Tech. Ltd. v. Maytag Corp.*, 241 F.R.D. 247, 249 (D.Del. 2007). As the court in *National Railway* states, these courts find that the majority view is more consistent with the spirit of full and efficient discovery. The expert report requirement avoids surprise by limiting the witness to the opinions set forth in his or her report. It may also eliminate the need to depose the expert witness or, at least, reduce the time required for deposition.

The opposing view is set forth in *Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D.Wash. 1999). In that case, the plaintiff disclosed three expert witnesses who were members of the plaintiff's tribal council and would be testifying regarding tribal customs and traditions. The plaintiff argued that these witnesses were not required to prepare written expert reports because their duties as council members did not involve their regularly giving expert testimony in court. The district court agreed. The court held that the the plain language of Rule 26(a)(2)(B) is contrary to the interpretation of the rule adopted in *Day* and similar decisions. *Navajo Nation* stated that "the rule has a specific category of employee experts who must provide a report: those who regularly testify. Given the plain language of this specific category, by implication, those employees who do not regularly testify for the employer but are doing so in a particular case need not provide the report." *Id.* 189 F.R.D. at 612. The court criticized *Day* and *Minn. Mining and Mfg. Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459, 460 (D.Minn. 1998) for simply rewriting the rule. The court further stated:

> Those who drafted FRCP 26(a)(2)(B) could simply have required reports for all employee-experts if that is what they had intended. Neither the *Day* nor the *Minnesota Mining* opinions attempt to explain why they did not. This Court finds that the absence of such an explanation together with the plain language of the rule make those cases unpersuasive as contrary to the plain language of Rule 26(a)(2)(B).

Although *Navajo Nation* arguably represents the minority view, several relatively recent district court decisions have agreed with its interpretation of Rule 26(a)(2)(B). *See Greenhaw v. City of Cedar Rapids, Iowa*, 255 F.R.D. 484, 487 (N.D.Iowa 2009); *The Lamar Company, LLC v. City of Marietta*, 538 F.Supp.2d 1366, 1380 (N.D.Ga. 2008); *GSI Group, Inc. v. Sukup Manuf. Co.*, 2007 WL 853959 at *2 (C.D.Ill. 2007); *Bowling v. Hasbro, Inc.*, 2006 WL 2345941 (D.R.I. 2006); *Adams v. Gateway*, 2006 WL 644848 at *2 (D.Utah 2006); *United States v. Adam Bros. Farming,*

*Inc.*, 2005 WL 5957827 at *5 (C.D.Cal. 2005); and *Kamel v. Whitfield*, 2010 WL 4531379 (E.D.Mich. 2010).  In stating its support for *Navajo Nation*, the district court in *Greenhaw v. City of Cedar Rapids, Iowa*, also states that the court "must apply the rule as it is written, not as it could have been or should have been written." 255 F.R.D. at 488.

       Cases adopting the "plain language" interpretation do not attempt to provide a policy rationale for exempting employee witnesses who do not regularly testify as experts from the requirements of Rule 26(a)(2)(B).  Nevertheless, there are legitimate reasons for distinguishing between "retained or specially employed" expert witnesses and employee witnesses who do not regularly testify as experts.  Retained experts are often engaged in the business of providing expert testimony and charge substantial fees for their services.  They may also regularly testify in court or at deposition and may testify on different sides of an issue depending on who retains them.  Retained or professional experts are arguably more likely to have published articles or treatises in their fields of expertise than employee witnesses who do not regularly testify as experts.  These matters are all relevant for impeachment purposes and Rule 26(a)(2)(B) expedites discovery by requiring that information regarding the witness's compensation, prior testimony and publications be produced with his or her report.  Professional experts are arguably more likely to be familiar with and readily able to comply with the requirements of Rule 26(a)(2)(B) than employee witnesses who do not regularly testify as experts.

       The 2010 amendment to Rule 26(a)(2) does not explicitly overrule the majority view in *Day* and *Prieto* and there is, as yet, no indication that courts which follow the majority view will now adopt the *Navajo Nation* position.  The court in *Meredith v. International Marine Underwriters*, 2011 WL 1466436 (D.Md. April 18, 2011), for example, discussed the applicability of  Rule 26(a)(2)(C), but still held that expert reports were required for employee witnesses whose opinions were formed specifically in anticipation of the litigation or otherwise outside their normal course of duty, notwithstanding that their duties do not regularly involve giving expert testimony.  *See also Coleman v. American Family Mutual Ins. Co.*, 2011 WL 173674 (N.D.Ind. June 2, 2011) regarding the impact of the 2010 amendment on the requirement, in certain circumstances, that treating physicians comply with Rule 26(a)(2)(B).  Cases involving expert testimony by treating physicians

are, however, of only limited relevance in deciding the issue in this case because treating physicians usually are not employees of the party proffering their testimony.

Allstate's damages witness Aaron Patterson was not involved in evaluating and determining the settlement value of the underlying claims during the time that they were being adjusted or litigated. Rather, he was assigned the task of reviewing the settlements and determining the amount of Allstate's alleged damages for purposes of testifying in this case. There is no dispute that in making his damages calculations, Mr. Patterson has relied on Dr. Little's expert opinions regarding the reasonable chiropractic and medical treatment and charges for each claim. To paraphrase *Prieto,* Mr. Patterson functioned exactly as an expert witness normally does, providing a technical evaluation of evidence he has reviewed in preparation for trial. Under *Day* and *Prieto*, Mr. Patterson would clearly be required to provide an expert report in compliance with Rule 26(a)(2)(B). There is no evidence, however, that Mr. Patterson's duties as an Allstate employee regularly involve giving expert testimony–particularly on the type of damages issues involved in this case. Thus, under *Navajo Nation*, Mr. Patterson is not required to provide a written report.

Although there is substantial merit in the interpretation of Rule 26(a)(2)(B) set forth in *Day* and *Prieto*, this Court concludes that it should adopt the interpretation set forth in *Navajo Nation* which is more consistent with the actual language of the rule. The Court's decision is also influenced by the 2010 amendment to Rule 26(a)(2). While that amendment did not explicitly reject the *Day-Prieto* interpretation, the fact that the Committee and the Supreme Court chose not to amend Rule 26(a)(2)(B) to adopt that position, but, instead, expanded the disclosures required for expert witnesses who are not required to prepare reports, supports the interpretation set forth in *Navajo Nation*. Accordingly, Mr. Patterson was not required to prepare a written report or provide the other information required by Rule 26(a)(2)(B). Because these requirements do not apply to Mr. Patterson, his expert testimony cannot barred on this basis.

The conclusion that Mr. Patterson was not required to comply with Rule 26(a)(2)(B), however, does not resolve the discovery issues pertaining to his testimony in this case. First, Allstate should have complied with Rule 26(a)(2)(C) when it disclosed Mr. Patterson as its "non-retained expert witness" on February 14, 2011. That subsection required Allstate to disclose (i) the

subject matter on which Mr. Patterson is expected to present expert witness testimony and (ii) a summary of the facts and opinions to which Mr. Patterson is expected to testify.[3] Allstate's Expert Witness Disclosure complied with the first requirement by stating that Mr. Patterson will testify "as to the calculation and amount of Allstate's damages in this matter." *Motion to Strike (#322), Exhibit E*. Although Allstate attached the Damages Spreadsheet to the Expert Witness Disclosure, it did not provide any summary explanation for the calculations set forth in the Spreadsheet. That information was not provided until Allstate served its supplemental responses to interrogatories on May 11, 2011. *Motion (#322), Exhibit A*.

It appears that Allstate's counsel was probably unaware of Rule 26(a)(2)(C) at the time he served Allstate's Expert Witness Disclosure. Neither party discussed this subsection in their respective briefs or at the hearing on this motion. As discussed above, the parties became embrangled in a dispute over additional deposition time and whether Mr. Patterson is required to comply with Rule 26(a)(2)(B). Although counsel, as well as the Court, are charged with knowledge of amendments to the Federal Rules of Civil Procedure, given the recent enactment of Rule 26(a)(2)(C), the Court finds that the imposition of sanctions on Allstate for failing to comply with this rule is not warranted.[4]

The Defendants are clearly entitled to depose Mr. Patterson regarding his expert opinions, the reasons and bases therefore, and the facts or data he considered in forming them. The absence

---

[3] The Advisory Committee Notes state that "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have."

[4] As this Court states in its separate order regarding the Nassiri Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312), Allstate should have disclosed the method and formula that Mr. Patterson used to calculate the damages in it Fourth Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1) served on January 24, 2011 and in the disclosures served thereafter. The failure to disclose the formula rendered those disclosures misleading. Absent barring Allstate from introducing evidence on damages, Allstate's failure to timely disclose the formula also clearly requires that Defendants be able to fully depose Mr. Patterson regarding his opinions on damages and to obtain rebuttal expert testimony if they so choose.

of an expert witness report increases the need for a complete and thorough deposition. Allstate has provided fairly sketchy information regarding the basis for it decision to use a mathematical formula to calculate the settlement value of the underlying claims that settled for less than policy limits. Defendants are entitled to explore the basis for this formula. In addition, Mr. Patterson did not prepare any memoranda or notes regarding his evaluations of the underlying claims that settled for policy limits. The absence of such records also increases Defendants' need to explore these matters in deposition.

The Court did not have complete information regarding these matters on April 27, 2011 when it granted Defendants only three additional hours to depose Mr. Patterson. The Court therefore rescinds that order. The Noorda and the Nassiri Defendants are entitled to at least one full day of seven hours, jointly, to depose Mr. Patterson. Counsel for the Defendants should confer with each other regarding the division of the deposition time. Counsel for all parties should further confer and attempt to agree either before or during the deposition as to whether more time will reasonably be needed. If the parties are unable to reach agreement, Defendants may move for additional deposition time upon a showing of good cause therefore.

Defendants are also entitled to disclose rebuttal expert witnesses in response to Mr. Patterson's expert testimony. Although Rule 26(a)(2)(D) states that the deadline for disclosing rebuttal experts is generally 30 days after the expert witness disclosure deadline, the Court will require Defendants to disclose their rebuttal expert witnesses, if any, within 30 days from the date Mr. Patterson's deposition is completed. The requirements of Rule 26(a)(2)(B) or (C) apply to any rebuttal expert witnesses disclosed by Defendants.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' Motion to strike and preclude Aaron Patterson from testifying as an expert witness based on Plaintiffs' alleged failure to comply with Rule 26(a)(2)(B). The Court will, however, provide other relief to Defendants to ensure that they have an adequate opportunity to depose Mr. Patterson and to obtain and disclose rebuttal expert witnesses to his testimony on damages. Accordingly,

. . .

**IT IS HEREBY ORDERED** that the Noorda Defendants' Motion to Strike Aaron Patterson As An Expert Witness and Preclude His Opinions on Damages At Trial (#322), and the Nassiri Defendants' Joinder (#325) therein, are **denied.**

**IT IS FURTHER ORDERED** that the Noorda and Nassiri Defendants may take the deposition of Plaintiffs' expert witness Aaron Patterson on or before August 12, 2011. The deposition is initially limited to one full day of seven (7) hours. The parties are encouraged to confer and agree as to whether additional time should be provided to complete the deposition. Absent agreement between the parties, Defendants may move for additional deposition time after they have deposed Mr. Patterson for one full day and can demonstrate good cause for additional time.

**IT IS FURTHER ORDERED** that the Noorda and Nassiri Defendants may disclose rebuttal expert witnesses to Mr. Patterson's expert testimony on or before September 12, 2011. Defendants' rebuttal expert witness disclosures shall comply with Rule 26(a)(2)(B) or (C) as applicable. Plaintiffs may depose the Defendants' rebuttal expert witness(es) on or before October 12, 2011. These deadlines *may* be extended based on the completion date of Mr. Patterson's deposition.

DATED this 20th day of July, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge