# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ALLSTATE INSURANCE COMPANY, *et al.*,

        Plaintiffs,

vs.

OBTEEN N. NASSIRI, D.C, *et al.*,

        Defendants.

Case No. 2:08-cv-00369-JCM-GWF

**ORDER**

**Motion to Strike Complaint - #312**

This matter is before the Court on the Nassiri Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312), filed on May 17, 2011; Plaintiffs' Response to the Nassiri Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#324), filed on June 3, 2011; and the Nassiri Defendants' Reply to Plaintiffs' Response (#330), filed on June 13, 2011.

On July 5, 2011, this Court conducted a hearing on the Noorda Defendants' Motion to Strike Aaron Patterson As An Expert Witness and Preclude His Opinions on Damages at Trial (#322). The facts and legal issues pertaining to the Noorda Defendants' motion are also pertinent to the Nassiri Defendants' instant emergency motion to strike Plaintiffs' Complaint. The instant motion was discussed during the July 5th hearing and the Court finds that there is no need for a further hearing or oral argument in regard to this matter. The Court therefore issues its decision and order as follows:

## BACKGROUND

Plaintiff Allstate[1] seeks to recover damages resulting from its alleged overpayment of settlements for bodily injury claims due to the unreasonable and unnecessary chiropractic and

---

[1] Three Allstate insurance companies are named as Plaintiffs. For simplicity, the Court refers to Plaintiffs in the singular as "Allstate."

medical services provided by Defendants.  Prior to June 28, 2010, Allstate had not provided a computation of its damages as required by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure and the Defendants had not raised its failure to do so as an issue.  On June 28, 2010, however, the Nassiri Defendants demanded that Allstate provide its damages computation.  When Allstate did not do so by August 15, 2010, the Nassiri Defendants filed their first motion to strike Allstate's claim for damages, enter its default and strike its complaint.  *See Motion (#211)*.  On August 16, 2010, Allstate provided the Defendants with the reports of its expert witness, Craig Little, D.C., regarding his opinions that the chiropractic and medical treatments provided to the underlying 157 claimants were unreasonable, unnecessary and fraudulent.  According to a chart prepared by Dr. Little, only $119,065.00 of the $791,330.00 in chiropractic charges billed by the Nassiri Defendants was reasonable and necessary, leaving a balance of $672,265.00 in allegedly unjustified chiropractic expenses.  Allstate's counsel, Bruce Kelley, prepared an estimate or computation of Allstate's damages for the alleged overpayment of the claims.  Mr. Kelley estimated the damages for overpayment at $559,000.00.  He stated, however, that the estimate was based "upon the discovery completed to date, and without consideration of Plaintiff's expert's opinions."  *See Order (#259), p. 4*.

Mr. Kelley's role in preparing the damages computation prompted the Nassiri Defendants to file a motion to disqualify Mr. Kelley and his law firm on the grounds that Mr. Kelley would now be a witness for Allstate on the issue of damages.  *See Motion to Disqualify (#254)*.  During the November 30, 2010 hearing on Defendants' motion to strike Plaintiffs' damages claim, Mr. Kelley stated that Aaron Patterson, an employee of Allstate, would testify at trial regarding the calculation of Plaintiffs' damages for overpayment and that Mr. Patterson's calculations and damages testimony would be independent of Mr. Kelley's computation of the estimated damages.  Mr. Kelley also stated that Allstate would revise its damages computation once it had reviewed the complete patient files that had recently been produced by the Nassiri Defendants.  *See Order (#259), December 16, 2010, pp. 3-4*.  Although Allstate had previously disclosed Mr. Patterson as a witness in this case, he was not disclosed as Allstate's damages witness until the November 30, 2010 hearing.

The Court denied the Nassiri Defendants' motion to strike Plaintiffs' damage claims, but stated:

> Plaintiffs must, however, act diligently to complete their expert analysis of the subject claims, provide their experts' reports and a final damages computation. If Plaintiffs fail to do so by the expert disclosure deadline, then a motion to preclude them from introducing damages evidence at trial will likely be granted. Plaintiffs should also be aware that the type of speculative damages computation provided by Plaintiffs' counsel on August 17, 2010 is not adequate.[2]

*Order (#259), p. 8.*

On January 24, 2011, Allstate served its Fourth Supplement to Plaintiff's Initial Disclosures Pursuant to FRCP 26(a)(1). This disclosure stated that Mr. Patterson would testify "as to the calculation of Allstate's damages in this case." *Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312), Exhibit 7, p. 2.* The Fourth Supplement also listed numerous factors that are or may be considered in determining the value of a bodily injury claim. After listing these factors, the Fourth Supplement stated:

> Although Plaintiff cannot enumerate every specific fact that it looked upon in each and every claim identified, it is Plaintiff's hope that the above list will be of assistance to the Defendants. Furthermore, Plaintiffs would be more than happy to address any further questions regarding this subject at the deposition of **Aaron Patterson, who is the Person Most Knowledgeable for ALLSTATE as to this issue**.

*Id. p 11.*

Except for the bold references to Mr. Patterson, the foregoing information was the same as that provided in Allstate's Second Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1) served on August 17, 2010. *See Response to Nassiri Defendants' Motion to Strike Plaintiffs' Damages Claim (#228), Exhibit E, pp. 9-10.* Allstate also attached to its Fourth Supplement a "Damages Spreadsheet" setting forth the amount of its alleged overpayment on each underlying claim. The total amount of overpayment damages listed on this spreadsheet was

---

[2] Pursuant to the Fourth Amended Stipulated Discovery Plan and Scheduling Order (#243), entered on September 21, 2010, the discovery cut-off in this case was extended to April 15, 2011 and the deadline for disclosing expert witnesses was extended to February 16, 2011.

$1,378,107.38 as compared to the $559,000 that Allstate's counsel had previously estimated in the disclosure made on August 17, 2010.

On February 9 and 10, 2011, the Noorda Defendants took the deposition of Allstate's person most knowledgeable ("PMK") on a number of topics which did not include Allstate's alleged damages. During that deposition the Noorda Defendants questioned Mr. Patterson about Allstate's Damages Spreadsheet, but did not explore the basis for the damages computation set forth in the Spreadsheet. The Nassiri Defendants did not attend that deposition. On February 14, 2011, Allstate served its Expert Witness Disclosure which listed Aaron Patterson as a "Non-Retained Expert Witness." The Expert Witness Disclosure stated that Mr. Patterson "will also testify as to the calculation and amount of ALLSTATE'S damages in this matter." Allstate also attached the "Damages Spreadsheet" to this disclosure and stated that it "illustrates and summarizes ALLSTATE'S damages in this case." *Emergency Motion to Strike Plaintiffs' Complaint (#312), Exhibit 8, p. 3.* On February 17, 2011, Allstate served its Fifth Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1) which set forth the same information regarding Mr. Patterson's testimony on damages that was contained in the Fourth Supplement. The same information was also included in Allstate's Sixth Supplement to Plaintiffs' Initial Disclosures Pursuant to FRCP 26(a)(1) served on March 30, 2011. *Noorda Defendants' Motion to Strike (#322), Exhibits B and F.*

On April 15, 2011, the Noorda Defendants filed an Emergency Motion for Leave to Take the Deposition of Aaron Patterson as Percipient Witness (#293). The Noorda Defendants argued that while they had deposed Mr. Patterson in his capacity as Allstate's PMK on February 9 and 10, 2011, the PMK deposition topics did not include Allstate's calculation or computation of damages. Defendants also argued that Allstate did not disclose Mr. Patterson as a witness on the issue of damages until February 17, 2011. *Emergency Motion (#293), pp. 3-4.* As stated above, however, Allstate had formally disclosed Mr. Patterson as a lay witness on damages on January 24, 2011. (He had also been "informally" disclosed as Allstate's damages witness during the November 30, 2010 hearing). Allstate had also disclosed Mr. Patterson as a "non-retained expert witness" on the issue of damages in its February 14, 2011 Expert Witness Disclosure. During the April 27, 2011

hearing on the Noorda Defendants' emergency motion to depose Mr. Patterson, the Court concluded that Mr. Patterson is, in fact, an expert witness on the issue of damages. The Court also decided that the Noorda Defendants should be granted three (3) additional hours to question Mr. Patterson about the damages computation so long as they agreed not to file a motion to disqualify Mr. Patterson based on the alleged failure to comply with Rule 26(a)(2)(B). Because the Nassiri Defendants did not attend the PMK deposition and did not join in the Noorda Defendants' motion to depose Mr. Patterson as a percipient witness, the Court held that the Nassiri Defendants were not entitled to question Mr. Patterson during the time granted for the taking of his deposition on the issue of damages.[3]

On May 11, 2011, Allstate served its Second Supplementary Response to Defendant Maryland Medical Center, LLC's First Set of Interrogatories in which it provided additional information regarding Aaron Peterson's computation of Allstate's damages. This Second Supplementary Response stated in relevant part as follows:

> For any underlying claim that settled for less than policy limits, Aaron Patterson used a formula that was created by Allstate to determine the amount of overpayment. Specifically, the amount of overpayment is the difference between 1) the amount of the actual settlement and 2) the smaller amount that Allstate should have paid. The amount that Allstate should have paid was determined by calculating the ratio of the amount of the actual settlement and the amount that Allstate had determined to be the allowed expenses at the time the claim was initially settled, then multiplying that ratio by the amount that Allstate's expert, Dr. Little, opined was the amount of the reasonable expenses.

*Nassiri Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312), Exhibit 9, p. 3.*

The Second Supplementary Response further stated that "[F]or any underlying claim that settled for policy limits, Mr. Patterson personally reviewed each claim that settled for policy limits to determine the amount that Allstate should have paid . . . ." The Second Supplementary Response stated that "[t]he reason that Allstate used this alternative approach . . . is that when a case settles for policy limits the amount of the settlement may not have been a true valuation of the case. It

---

[3] The Court has, however, rescinded that order and has authorized both sets of Defendants to fully depose Mr. Patterson in regard to his opinions and calculations concerning Allstate's alleged damages. *See Order (#341)*.

may simply have been all the money that was available." *Id., Second Supplementary Response, pp. 3-4*. Although Allstate did not expressly state the number of claims that settled for policy limits, based on the Court's review of the Damages Spreadsheet, it appears that only 38 claims settled for policy limits. Thus, the alleged settlement value of 119 of the claims was determined by using the "formula that was created by Allstate to determine the amount of overpayment."

## DISCUSSION

The Nassiri Defendants assert that Allstate's Complaint should be stricken and its default entered, or that it should be precluded from introducing damages evidence at trial based on its failure to timely disclose the method or formula it used to calculate its damages. This Court has previously set forth the case law regarding the requirements for a proper damages computation pursuant to Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure and the sanctions that may imposed for the plaintiff's failure to comply with that rule. *Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111 (D.Nev. December 16, 2010) (Case No. 2:08-cv-00369-JCM-GWF, Order (#259)). *See also CCR/AG Showcase Phase I Owner L.L.C. v. United Artists Theatre Circuit, Inc.*, 2010 WL 1947016 (D.Nev. 2010). The Court again summarizes that law as follows:

The plaintiff's computation of damages should provide sufficient detail to enable the defendants to understand the contours of their potential exposure and make informed decisions regarding settlement and discovery. The word "computation" contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages. *City and County of San Francisco v. Tutor-Saliba Corporation*, 218 F.R.D. 219, 221 (N.D.Cal. 2003). The party seeking damages must also timely disclose its *theory* of damages as well as the computation of those damages. *24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F.Supp.2d 305, 318 (S.D.N.Y. 2008). A plaintiff should disclose the basic method or formula by which it contends its damages should or will be calculated even if it cannot identify the specific dollar amount of damages pending further discovery. *Heerden v. Board of Sup'rs of LSU*, 2011 WL 293758, *8 (M.D.La. 2011). The disclosure should be more specific and in greater detail, the closer it is made to the end of discovery and the trial date. *Design Strategy, Inc. v. Davis*, 469 F.3d 284 295-96 (2nd Cir. 2006). The plaintiff cannot shift to defendant the burden of attempting to determine the amount of the

claimed damages from documents that are produced without any explanation of plaintiff's claimed damages. *Id.* 469 F.3d at 294-95.

Rule 37(c)(1) states that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. The rule also states that "in addition to or instead of this sanction," the court may order payment of reasonable expenses, including attorney's fees caused by the failure, may inform the jury of the party's failure and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(v). The burden is upon the disclosing party to show that the failure to disclose was justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (involving failure to timely disclose expert witness under Rule 26(b)(2)).[4]

In *Hoffman v. Construction Protection Services*, 541 F.3d 1175 (9th Cir. 2008), the plaintiffs sought recovery of damages for all plaintiffs in a collective action under the Fair Labor Standards Act (FLSA). The lead plaintiffs failed to provide a computation of damages for the opt-in plaintiffs, either individually or as a group, prior to the pretrial conference. Based on this failure, the court granted defendant's motion to exclude damages evidence regarding the opt-in plaintiffs. In affirming the exclusion of damage evidence, the Ninth Circuit stated that the late disclosure of plaintiffs' damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. The court stated that such modifications to the court's and the parties' schedules supported a finding that the failure to disclose was not harmless. The court also held that the trial court was not required to make a

---

[4] Generally, case dispositive sanctions, such as dismissal of the plaintiff's complaint, may be imposed only if the conduct of the party to be sanctioned has been willful, the moving party's ability to obtain a fair trial has been unfairly prejudiced and imposition of lesser sanctions would be inadequate. *See Henry v. Gill Industries,* 983 F.2d 943, 948 (9th Cir. 1993); *Anheuser-Busch, Inc. v. Natural Beverage Distributors, Inc.*, 69 F.3d 337, 348 (9th Cir. 1995); and *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051, 1057-58 (9th Cir. 1998). As discussed herein, Allstate's failure to timely disclose the method or formula it used to calculate its alleged damages does not warrant the express or *de facto* imposition of case dispositive sanctions.

finding of willfulness or bad faith to exclude damages evidence or witnesses based on failure to comply with Rule 26(a).  *Id.* at 1180, citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Rule 37(c)(1), however, does not require the district court in all instances to exclude evidence or testimony as a sanction for late disclosure that is neither justified nor harmless.  In *Design Strategy, Inc. v. Davis*, 469 F.3d at 296, 298, the Second Circuit rejected the view that the exclusion of evidence is mandatory for failure to comply with Rule 26(a).  The court stated that in determining the appropriate sanction, the court should consider the following factors:  (1) the party's explanation for the failure to comply with the disclosure requirement, (2) the importance of the excluded evidence or testimony, (3) the prejudice suffered by the opposing party as a result of having to meet new evidence and (4) the possibility of a continuance.  The Ninth Circuit has identified similar factors that the district court should consider in deciding whether to impose Rule 37(c)(1)'s exclusion sanction in regard to the failure to timely disclose expert witness testimony. *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) states that the court should consider (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.  Although a finding of willfulness or bad faith is not required in order to impose the exclusion of evidence sanction, willfulness or bad faith is clearly a factor that the court may consider in determining the severity of the sanction.  *See also AZ Holding, L.L.C. v. Frederick*, 2009 WL 2432745, *5 (D.Ariz. 2009); *Park v. Cas Enterprises, Inc.*, 2010 WL 55888, *4 (S.D.Cal. 2010); *Galentine v. Holland America Line--Westours, Inc.*, 333 F.Supp.2d 991, 995 (W.D.Wash. 2004);  *F.D.S. Marine, LLC v. Brix Maritime Co.*, 211 F.R.D. 396, (D.Or. 2001); and *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 642 (D.Haw. 2008).

Courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed.  *CQ Inc. v. TXU Mining Company*, 565 F.3d 268 (5th Cir. 2009); *24/7 Records v. Sony Music Entertainment*, 566 F.Supp.2d 305, 318 (S.D.N.Y. 2008); and *Green Edge Enterprises, LLC v. Rubber Mulch Etc.*

*LLC*, 2009 WL 1383275 (E.D.Mo. 2009). On the other hand, the courts are likely to be lenient if the delay can be rectified by a limited extension of the discovery deadline. *Frontline Medical Associates, Inc. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D.Cal. 2009) and *Galentine v. Holland America Line--Westours, Inc.*, 333 F.Supp.2d at 995.

In this case, Allstate formally disclosed Mr. Patterson as its damages witness on January 24, 2010 and provided Defendants with the Damages Spreadsheet which provided numerical information regarding the alleged settlement value of each of the 157 claims. This disclosure was timely made under the scheduling order in effect. Neither the Spreadsheet nor Allstate's Supplements to its Initial Disclosures, however, informed the Defendants that Mr. Patterson had used a mathematical formula to determine the alleged actual settlement value of most of the underlying claims. Allstate's Supplemental Disclosures were, in fact, misleading because they indicated that Mr. Patterson had evaluated each of the 157 claims using the various factors listed in the disclosures. Allstate did not disclose the actual method it used to calculate the alleged settlement value of the claims until May 11, 2011, more than 3½ months after Mr. Patterson was formally disclosed as Allstate's damages witness and nearly a month after the general discovery deadline passed. Allstate has not offered any explanation or justification for not disclosing this formula in its January 24, 2011 supplemental disclosure and the Court cannot conceive of any legitimate excuse for not doing so. The Court therefore concludes that sanctions should be imposed on Allstate for its violation of Rule 26(a)(1)(A)(iii).[5]

Although Allstate has not shown that its failure to disclose the method and formula was either justified or harmless, imposition of the evidence preclusion sanction under Rule 37(c)(1) is not warranted. First, this is not a case in which the plaintiff has failed provide any damages computation prior to the deadline for doing so or only on the eve of trial. Allstate did, in fact,

---

[5] Allstate also did not provide any information regarding the formula in its Expert Witness Disclosure which designated Mr. Patterson as a non-retained expert witness on the issue of damages. Pursuant to Rule 26(a)(2)(C), which became effective on December 1, 2010, Allstate should also have provided information regarding the use of the formula in its expert witness disclosure. The Court, however, does not base its finding that Allstate should be sanctioned on that provision.

timely disclose its damages witness, Mr. Patterson, as both a lay and expert witness, and did provide a fairly detailed Damages Spreadsheet setting forth the alleged settlement value of each underlying claim and the amount of the alleged overpayment on each claim. Allstate had also properly disclosed its chiropractic/medical expert witness, Dr. Little, upon whose reports and opinions Allstate's damages claims are substantially based.

Secondly, the Noorda Defendants and Allstate become embroiled in a dispute regarding whether Defendants should be given additional time to depose Mr. Patterson about his calculation of damages or whether Mr. Patterson is required to provide an expert witness report in compliance with Rule 26(a)(2)(B). The Nassiri Defendants, who are the movants here, largely sat on the sidelines of that dispute. Although belated, Allstate provided the information regarding the formula prior to the anticipated date for Mr. Patterson's deposition pursuant to the Court's order on April 27, 2011. The Court has now resolved the issues relating to Mr. Patterson's expert testimony on damages by holding that he is not required to provide a written report. The Court has also rescinded the order which limited Mr. Patterson's deposition by the Noorda Defendants to three hours, and has now ordered that both the Nassiri Defendants and the Noorda Defendants shall have the full opportunity to depose Mr. Patterson in regard to Allstate's alleged damages. The Court has also ordered that Defendants may designate rebuttal expert witnesses to Mr. Patterson's expert opinions on the issue of damages. Although these measures result in the further delay of the trial or resolution of this action, the completion of discovery has already been delayed for other reasons for which Defendants are also partly responsible.

None of this, however, excuses Allstate's failure to timely disclose the method or formula used to calculate its alleged damages. Although the Court does not grant the severe sanctions requested by the Defendants, it will require Allstate to pay the Nassiri Defendants' reasonable attorney's fees and costs incurred in the prosecution of their Emergency Motion to Strike Plaintiffs' Complaint (#312). The award of attorney's fees and costs is an appropriate lesser sanction pursuant to Rule 37(c)(1)(A), given Allstate's misleading failure to disclose the actual method it used to calculate the settlement value of the underlying claims. To the extent that either the Nassiri Defendants or the Noorda Defendants can demonstrate that they incurred any other attorney's fees

or expenses directly attributable to Allstate's delay from January 24 to May 11, 2011 in disclosing the method or formula it used to calculate its damages, then Defendants may also apply to the Court for the award of such fees and expenses as a further sanction against Allstate.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff Allstate should be sanctioned for its unjustified failure to disclose the method or formula used to calculate its alleged damages in violation of Rule 26(a)(1)(A)(iii).  Accordingly,

**IT IS HEREBY ORDERED** that  Defendants' Emergency Motion to Strike Plaintiffs' Complaint (#312) is **granted**, in part, and **denied**, in part, as follows:

1. Defendants Obteen Nassiri, D.C., Jennifer Nassiri, Advanced Accident Chiropractic Care and Digital Imaging Services ("Nassiri Defendants") are awarded their reasonable attorney's and costs incurred in pursuing their motion (#312) as a sanction against Plaintiff Allstate for its failure to timely disclose the method or formula it used to calculate its alleged damages.

2. The Nassiri Defendants and the Noorda Defendants may also apply for an award of other reasonable attorney's fees and costs, if any, that they incurred as a direct result of Allstate's delay from January 24 to May 11, 2011 in disclosing the method or formula it used to calculate its alleged damages.

3. Counsel for Defendants shall, no later than 14 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in the motion addressed in this order, and/or which Defendants incurred as a direct result of Allstate's delay from January 24 to May 11, 2011 in disclosing the method or formula it used to calculate its alleged damages.  The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work.  The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

      4.     Counsel for Plaintiffs shall have 14 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

      5.     Counsel for Defendants shall have 7 days from service of the responsive memorandum in which to file a reply.

DATED this 20th day of July, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge