1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, et al., | 2:08-CV-369 JCM (GWF) |
| Plaintiffs, | |
| v. | |
| OBTEEN N. NASSIRI, D.C., et al., | |
| Defendants. | |

**ORDER**

Presently before the court is the Noorda defendants'[1] motion in limine no. 1 to exclude Aaron Patterson as plaintiffs' damages expert, or alternatively, request for *Daubert* hearing. (Doc. # 494). The Nassiri defendants[2] joined this motion. (Doc. # 501). Plaintiffs Allstate Insurance Company *et al.* responded. (Doc. # 524).

Also before the court is the Noorda defendants' motion in limine no. 2 to preclude plaintiffs from using deposition testimony of either Albert Noorda, M.D. or Diane Ruhl from unrelated lawsuits. (Doc. # 495). The Nassiri defendants joined this motion. (Doc. # 502). Plaintiffs replied. (Doc. # 525).

Also before the court is the Noorda defendants' motion in limine no. 3 to preclude any reference to Albert Noorda, M.D. having an ownership interest in Maryland Medical Center, LLC.

---

[1] The Noorda defendants include Albert Noorda, M.D. and Maryland Medical Center, LLC who have supposedly settled.

[2] The Nassiri defendants include Obteen Nassiri, D.C.; Jennifer Nassiri; Advanced Accident Chiropractic Care; and Digital Imaging Services, aka Digital Imaging Services, LLC.

**James C. Mahan**
**U.S. District Judge**

1  (Doc. # 496). The Nassiri defendants joined this motion. (Doc. # 503). Plaintiffs replied. (Doc. #
2  526).

3      Also before the court is the Noorda defendants' motion in limine no. 4 to preclude an
4  reference to Nevada Secretary of State and city of Las Vegas documents. (Doc. # 497). The Nassiri
5  defendants joined this motion. (Doc. # 504). Plaintiffs responded. (Doc. # 527).

6      Also before the court is the Noorda defendants' motion in limine no. 5 to preclude reference
7  to illegal self-referrals. (Doc. # 498). The Nassiri defendants joined this motion. (Doc. # 505).
8  Plaintiffs responded (Doc. # 528).

9      Also before the court is the Noorda defendants' motion in limine no. 6 to preclude plaintiffs
10 from using speculative opinions from Diane Ruhl. (Doc. # 499). The Nassiri defendants joined this
11 motion. (Doc. # 506). Plaintiffs responded. (Doc. # 529).

12     Also before the court is the Noorda defendants' motion in limine no. 7 to preclude any
13 reference that medical treatment provided by Albert Noorda and Maryland Medical Center, LLC was
14 unreasonable or unnecessary. (Doc. # 500). The Nassiri defendants joined this motion. (Doc. # 507).
15 Plaintiffs responded. (Doc. # 530).[3]

16     Also before the court is the Nassiri defendants' motion in limine to preclude plaintiff's
17 damages expert, Aaron Patterson. (Doc. # 508). Plaintiffs responded. (Doc. # 544).

18     Also before the court is the Nassiri defendants' motion in limine to preclude plaintiffs from
19 presenting any evidence at trial in support of its federal RICO claim (Doc. # 509). Plaintiffs
20 responded. (Doc. # 542).

21     Also before the court is the Nassiri defendants' motion in limine to preclude any evidence
22 concerning the Nevada Chiropractic Physicians' Board's findings of fact and conclusions of law.
23 (Doc. # 510). Plaintiffs responded. (Doc. # 543).

24

25     [3] The Nassiri defendants filed replies in support of the Noorda defendants' motions in limine nos. 1-3 and nos.
26 5-7. (*See* docs. # 549–554). While CM/ECF populated reply dates for the briefing process on these motions, the District
of Nevada Local Rules govern this district's procedure. Local rule 16-3 provides the procedure this district follows in
27 regards to motions in limine. And local rule 16-3(b) states that "[r]eplies will be allowed only with leave of the Court."
Here, the Nassiri defendants did not seek leave of the court prior to filing the replies. The court declines to consider the
28 replies as the replies are procedurally defective.

1    **I.      Legal standard**

2        "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the

3    practice has developed pursuant to the district court's inherent authority to manage the course of

4    trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1980). Judges have broad discretion when ruling on

5    motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also*

6    *Trevino v. Gates,* 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in

7    performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of

8    discretion").

9        "[*I*]*n limine* rulings are not binding on the trial judge [who] may always change his mind

10   during the course of a trial." *Ohler v. United States,* 529 U.S. 753, 758 n.3 (2000); *accord Luce,* 469

11   U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence

12   unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that

13   all evidence contemplated by the motion will be admitted at trial. Denial merely means that without

14   the context of trial, the court is unable to determine whether the evidence in question should be

15   excluded." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004).

16   **II.     Discussion**

17       The court will address only those facts which are pertinent to resolution of the instant

18   motions in limine. As an initial matter, the court acknowledges that a settlement was reached

19   between plaintiffs and the Noorda defendants. (Doc. # 518). The court, however, will address pretrial

20   motions filed by the Noorda defendants because the Nassiri defendants have joined these motions.

21       **A.      Noorda defendants' motion in limine no. 1 to exclude Aaron Patterson as**

22               **plaintiffs' damages expert, or alternatively, request for *Daubert* hearing (doc.**

23               **# 494)**

24           **I.      Legal standard**

25       An expert witness may testify at trial if the expert's "specialized knowledge will assist the

26   trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. A witness

27   must be "qualified as an expert by knowledge, skill, experience, training, or education" and may

28

**James C. Mahan**
**U.S. District Judge**

1  testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

2  reliable principles and methods, and (3) the witness has applied the principles and methods reliably

3  to the facts of the case." *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999).

4  Expert testimony is liberally admitted under the Federal Rules. *See Daubert*, 509 U.S. at 588 (noting

5  that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing

6  the traditional barriers to opinion testimony"); *see also* FED. R. EVID. 702 advisory committee notes

7  to 2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

8        The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not

9  only relevant, but reliable." *Daubert*, 509 U.S. at 589. "Concerning the reliability of non-scientific

10  testimony . . ., the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not

11  applicable to this kind of testimony, whose reliability depends heavily on the knowledge and

12  experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident*

13  *Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

14        In such cases, the trial court's gatekeeping role under *Daubert* involves probing the expert's

15  knowledge and experience. *See id.* at 1018. "It is the proponent of the expert who has the burden of

16  proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir.1996).

17  Admissibility of the expert's proposed testimony must be established by a preponderance of the

18  evidence. *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted).

19            **ii.**    **Discussion**

20        The Noorda defendants seek to exclude Patterson as plaintiff's damages expert. The Noorda

21  defendants specifically argue that Patterson is not qualified to serve as an expert on damages; that

22  the formula used for calculating damages was developed by Allstate and its attorneys; that

23  Patterson's opinions concerning damages do no satisfy the admissibility requirements of expert

24  testimony under *Daubert*; that Patterson's opinion testimony regarding "illegal" referrals lacks

25  foundation and is based on inadmissible hearsay; that plaintiffs have failed to satisfy their burden

26  that Patterson is qualified to testify; and that Patterson's opinions are inherently defective because

27  he has not and cannot show that Noorda or Maryland Medical Center ("MMC") caused plaintiffs'

28

**James C. Mahan**
**U.S. District Judge**

1    alleged financial losses. The Noorda defendants contends that because Patterson has no mathematical

2    training and has never served as an expert before, he is not qualified to testify as an expert on

3    plaintiffs' damages.

4           Plaintiffs respond that whether Patterson is qualified to testify as an expert turns on what he

5    is actually calculating–and here Patterson is calculating what Allstate could have paid in settlement

6    had Allstate known the correct facts at the time of settlement. This requires that Patterson have

7    knowledge of how Allstate evaluates its claims and would react to information regarding fraudulent

8    or illegal treatment in evaluating those claims. Plaintiffs further contend that Patterson's damages

9    calculation is based on the assumption that treatment was illegal, but that it is up to the jury to

10   determine if the treatment was actually illegal. And only if the treatment was illegal would

11   Patterson's damages calculations be appropriate. Plaintiffs also assert that the Noorda defendants'

12   proximate cause argument is beyond the scope of the motion in limine and seeks to be a dispositive

13   motion on plaintiffs' federal and state RICO claims.

14          The court denies this motion and defendants' alternative request for a *Daubert* hearing.

15   Whether Patterson is qualified to testify as a damages expert on plaintiffs' behalf has come before

16   the court before on two separate occasions: (1) the court's hearing on the Nassiri defendants' motion

17   to strike plaintiffs' claim for damages and the Nassiri defendants' motion to disqualify counsel based

18   on counsel's involvement in establishing the damages calculations (doc. # 255); and (2) the court's

19   order addressing the Noorda defendants' motion to strike plaintiffs' damages (doc. # 445).

20          The court has already found that Patterson's opinions and calculations relating to the alleged

21   overpayment of the underlying claims are based on (1) the opinions of Dr. Craig S. Little, D.C., who

22   reviewed the chiropractic and medical services provided in each of the underlying claims and the

23   amount billed by defendants for those services; and (2) the advice or opinion of plaintiffs' counsel

24   regarding NRS § 439B.425(1).[4] Thus, it does not appear that Patterson is simply parroting a

25   _____

26        [4] NRS § 439B.425(1) states that "[e]xcept as otherwise provided in this section, a practitioner shall not refer
     a patient, for a service or for goods related to health care, to a health facility, medical laboratory, diagnostic imaging or
27   radiation oncology center or commercial establishment in which the practitioner has a financial interest."

28

**James C. Mahan**
**U.S. District Judge**                                                    - 5 -

1    computation provided to him by plaintiffs' counsel (*see* doc. # 263, 2). Instead, based on the

2    testimony of Patterson, Little, and the documentation on damages already provided to the Noorda

3    defendants, which has not been refuted with a counter-expert, plaintiffs have met their burden by

4    showing that Patterson's testimony is reliable by a preponderance of the evidence. (Patterson

5    deposition, *see* doc. # 414, Ex. A; plaintiff's disclosure of expert testimony, *see* doc. # 322, Ex. E;

6    damages spreadsheet, see doc. # 322, Ex. C).

7            Last, the court finds that the Noorda defendants' proximate cause arguments exceed the scope

8    of the instant motion in limine and instead seek summary judgment on this issue. It is well past the

9    stage to file such motions, for this reason, this portion of the Noorda defendants' motion in limine

10   no. 1 is disregarded.

11           **B.      Noorda defendants' motion in limine no. 2 to preclude plaintiffs from using**

12                   **deposition testimony of either Albert Noorda, M.D. or Diane Ruhl from**

13                   **unrelated lawsuits (doc. # 495)**

14           The Noorda defendants request the court preclude the deposition testimony of Noorda and

15   Ruhl for any purpose because these depositions were surreptitiously obtained outside the scope of

16   this litigation. The Noorda defendants argue that deposition testimony of Ruhl obtained in *Ramirez*

17   *v. Yarbrough* and in *Guevera v. Bergeron*; and the deposition testimony of Noorda obtained in *Lopez*

18   *v. Bussell* and in *Ramirez* should be precluded under Fed. R. Civ. P. 32(a)(8) because the depositions

19   do not relate to issues common in both lawsuits. These other lawsuit were personal injury lawsuits.

20   Further, the Noorda defendants request the court to exclude this testimony as a sanction against

21   plaintiffs.

22           Plaintiffs respond that they intend to use Noorda's previous depositions for impeachment

23   purposes only, under Fed. R. Civ. P. 32(a)(2). Further, the depositions are not hearsay pursuant to

24   Fed. R. Evid. 801(d)(1)(A). Plaintiffs also contend that the Noorda defendants should be judicially

25   estopped from arguing that Ruhl's prior deposition testimony is completely unrelated to this matter,

26   as the Noorda defendants previously argued–in support of the protective order–that the prior

27   

28

1    deposition testimony was *almost completely related*.

2          To the extent this motion is still operative, the court denies this motion. Plaintiffs may use

3    Noorda's prior deposition testimony for impeachment purposes only. Further, the Noorda defendants

4    are judicially estopped from taking an inconsistent position and arguing that Ruhl's deposition

5    transcripts do not contain issues common to this lawsuit. The Noorda defendants previously argued

6    in their motion seeking a protective order that permitting plaintiffs to take Ruhl's deposition would

7    be duplicative and cumulative.

8          To permit the Noorda defendants to assert otherwise would be inequitable. Further, the

9    Noorda defendants have already stipulated to the introduction of Ruhl's deposition in this matter.

10   (Doc. # 516, Ex. 1, 9:19-21). Thus, the court will permit the reading of Ruhl's deposition into

11   evidence; however, defendants will be permitted to assert all appropriate objects to the specific

12   testimony plaintiffs intend to introduce.

13   **C.      Noorda defendants' motion in limine no. 3 to preclude any reference to Albert**

14   **Noorda, M.D. having an ownership interest in Maryland Medical Center, LLC**

15   **(doc. # 496)**

16         The Noorda defendants seek to preclude plaintiffs from making any reference to or assertion

17   that Noorda has any ownership interest in MMC. The Noorda defendants contend that any assertion

18   that Noorda has an ownership interest lacks foundation. Specifically, the Noorda defendants argue

19   that Noorda does not meet the definition of having a financial interest as defined in NAC 439B.530.[5]

20

21         [5] 1. Except as otherwise provided in paragraph (f) of subsection 2 of NRS 439B.425, "financial interest"

22   means an ownership or other interest:
                (a) That provides compensation based, in whole or in part, upon the volume or value of goods or

23   services provided as a result of referrals; and
                (b) Which a practitioner or a person related to the practitioner within two degrees of consanguinity or

24   affinity:
                      (1) Owns, in whole or in part; or

25                   (2) Holds as a beneficiary of a trust.
        2. The term includes, but is not limited to:

26             (a) A financial kickback, referral fee or finder's fee.
               (b) An income-sharing agreement, debt instrument, or lease or rental agreement that provides

27   compensation based, in whole or in part, upon the volume or value of the goods or services provided
        as a result of referrals.

28   NRC 439B.530.

**James C. Mahan**
**U.S. District Judge**

1  The Noorda defendants go on to list the lack of evidence to establish Noorda's alleged financial
2  interest.

3        Plaintiffs assert that they have their own evidentiary basis to establish that Noorda had an
4  ownership interest in MMC. Specifically, plaintiffs point to Noorda's testimony that he did not have
5  an ownership interest in any medical facility other than MMC.

6        To the extent this motion is still operative, this motion is denied. The court finds that the
7  Noorda defendants are essentially asking the court to resolve a jury issue–that is, whether there is
8  sufficient evidence to establish that Noorda had an ownership interest in MMC. Further, the Noorda
9  defendants admitted in their motion that the Joyce E. Noorda separate property trust was a managing
10  member of MMC–thus, there is a triable issue of fact as to whether Noorda has a financial interest
11  in MMC under NRS § 439B.425 and NAC 439B.530.

12      **D.**    **Noorda defendants' motion in limine no. 4 to preclude any reference to Nevada**
13          **Secretary of State and city of Las Vegas documents (doc. # 497)**

14        Fed. R. Evid. 803(8) states that:

15        A record or statement of a public office if:

16          (A) it sets out:

17              (I) the office's activities;

18              (ii) a matter observed while under a legal duty to report, but not including, in
                a criminal case, a matter observed by law-enforcement personnel; or
19
                (iii) in a civil case or against the government in a criminal case, factual
20              findings from a legally authorized investigation; and

21
            (B) neither the source of information nor other circumstances indicate a lack of
22          trustworthiness.[6]

23        The Noorda defendants argue that the court should preclude plaintiffs from making any
24  reference to documents from the Nevada Secretary of State or the city of Las Vegas. These
25  documents are:

26
    _____
27      [6] While Fed. R. Evid. 803(8) reads differently than before, the 2011 Amendments to the Fed. R. Evid. make
    clear that "[t]hese changes are intended to be stylistic only. There is no intent to change any result in any ruling on
28  evidentiary admissibility." Advisory Committee Notes, 2011 Amendments.

**James C. Mahan**
**U.S. District Judge**

1.    Maryland Medical Center, LLC's articles of organization from the Nevada Secretary of State (doc. # 497, Ex. A); and

2.    Maryland Medical Center, LLC's Las Vegas business license application (doc. # 497, Ex. B).

Defendants contend that the documents are inadmissible hearsay for which there is no exception and that any probative value is outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 801, 401, and 403. Specifically, defendants argue that the documents fail to satisfy the public records exception, Fed. R. Evid. 803(8)(A)(I-iii), because the documents do not set out the office's activities, that the documents were prepared by a public official under a legal duty to report, nor that the factual findings were from a legally authorized investigation. Further, defendants argue that Noorda's name is not found on either document and there is no evidence that he reviewed or prepared the documents before they were submitted.

Plaintiffs argue that the documents are relevant to a key issues in the case: whether there were illegal self-referrals, the motive of the parties, whether there was an enterprise, and whether the defendants are interrelated. Further, plaintiffs contend that the documents satisfy the public records exception to hearsay. Plaintiffs reply on *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), which held that "public records and reports" include "[r]ecords, reports, statements, or date compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . " *id.* at 161, and argue that the official records of the Nevada Secretary of State and official documents from the city of Las Vegas fall within this exception.

To the extent this motion is still operative, this motion is denied. The court finds that the Nevada Secretary of State articles of organization fall within the public records hearsay exception. However, the Las Vegas application for business license does not satisfy the requirements of this exception–this application is not a record or statement of a public office. This application was created by Jennifer Nassiri in attempts to obtain a business license. While the application fails under this hearsay exception, it is still possible for this application to be entered into evidence. Thus, the Noorda defendants request to preclude references to these documents is denied. However, reference

**James C. Mahan**
**U.S. District Judge**

- 9 -

1    to these documents is contingent upon their admission into evidence.

2        **E.        Noorda defendants' motion in limine no. 5 to preclude reference to illegal self-**

3             **referrals (doc. # 498)**

4        Defendants seek a order precluding plaintiffs from making any reference or assertion that

5    either Noorda or MMC engaged in illegal self-referrals. Defendants argue that any reference is

6    irrelevant because an illegal self-referral is insufficient to establish a predicate act to prove either a

7    federal or state RICO violation. Also, defendants argue that any reference lacks foundation and is

8    speculative.

9        The amended joint pre-trial order states that the contested factual issues include: "[e]ach of

10   the defendants, individually or through the corporate defendants, engaged in financially self-

11   interested referrals." (Doc. # 474, ¶ 50). Defendants contend that this factual "issue" is irrelevant and

12   that there is no evidence to support this assertion. Specifically, defendants contend that it is irrelevant

13   because an illegal self-referral is a misdemeanor, *see* NRS § 439B.425(3), and to impose RICO

14   liability a "predicate act" must be a felony, *see* 18 U.S.C. § 1961(1)(A)-©). Further, defendants argue

15   that plaintiffs allege that the referrals were made by other defendants, not Noorda.

16       Plaintiffs retort that a predicate act under a Nevada state RICO claim need not be a felony.

17   Further, illegal self-referrals are alleged to be part of the overall scheme, which includes mail and

18   wire fraud–thus, mail and wire fraud can serve as the predicate acts for the federal RICO claim. Last,

19   plaintiffs argue that mere participation in the alleged scheme to defraud is sufficient to establish

20   federal RICO liability and does not require that Noorda actually made the referrals for liability to

21   attach.

22       To the extent this motion is still operative, the motion is denied. Plaintiffs have alleged that

23   both Nassiri and Noorda were complicit in the process. Thus, the fact that defendants, other than

24   Noorda, are alleged to have made the referrals is not decisive for plaintiffs' federal RICO claim.

25   Further, evidence regarding Noorda's illegal referrals is relevant to plaintiffs' state RICO claim

26   which does not require the predicate act to be a felony.

27   . . .

28

James C. Mahan
U.S. District Judge

- 10 -

**F.      Noorda defendants' motion in limine no. 6 to preclude plaintiffs from using speculative opinions from Diane Ruhl (doc. # 499)**

The Noorda defendants seek an order precluding plaintiffs from eliciting any and all speculative opinions from Ruhl pertaining to the ownership or operation of MMC because she does not have personal knowledge of this matter. *See* FED. R. EVID. 602. Specifically, defendants argue that during two of Ruhl's depositions on June 3, 2008, and July 15, 2010, Ruhl was asked questions regarding the ownership and operation of MMC. Although Ruhl repeatedly answered that she did not know the answer to those questions, she did offer several speculative opinions.

Plaintiffs respond that they do not need to read the portion of Ruhl's deposition transcript cited to by the Noorda defendants and further state that they are not seeking to read into evidence the testimony of Ruhl in the *Guevera* case. Based on the representations of plaintiffs, this motion is denied as moot.

**G.      Noorda defendants' motion in limine no. 7 to preclude any reference that medical treatment provided by Albert Noorda and Maryland Medical Center, LLC was unreasonable or unnecessary (doc. # 500)**

The Noorda defendants last motion in limine requests the court to preclude plaintiff from making any reference to or asserting that the medical treatment provided by Noorda or Ruhl at MMC was unreasonable or unnecessary. Further, the Noorda defendants request that this court preclude plaintiffs from asserting that the medical bills from MMC were unreasonable, unnecessary or for treatment that was not provided at MMC. Defendants argue that plaintiffs do not have an expert to refute defendants experts, Dr. Joseph Scherger and Randy Danielsen, a physicians assistant, who opine that Noorda and Ruhl's treatment was appropriate and within the standard of care.

Plaintiffs respond that their expert, Dr. Little, will testify that the referrals for nearly all of the 45 claimants at issue for MMC were not justified based on medical information. That is, the referral made by Advanced Accident to MMC was not necessary from a chiropractic standpoint and thus any treatment following the referral was unnecessary. Further, plaintiffs contend that the standard of care is irrelevant here since whether the treatment fell below the standard of care is not

1   at issue here; instead it is plaintiffs' position that Noorda knew that the patients did not need his

2   services and treated them anyways–not that Noorda or Ruhl harmed the patients.

3        To the extent this motion is still operative, this motion is denied. Because there is conflicting

4   evidence as to whether the medical treatment provided by Noorda and MMC was necessary or

5   reasonable, this issue should be resolved by the trier of fact. The court will not preclude plaintiffs

6   from referring to their position of the evidence, provided that such evidence becomes part of the trial

7   record.

8        **H.**    **Nassiri defendants' motion in limine to preclude plaintiff's damages expert,**

9               **Aaron Patterson (doc. # 508)**

10       This motion in limine requests the same relief sought in the Noorda defendants' motion in

11  limine no. 1. (*See* doc. # 494). That is, the Nassiri defendants seek an order disqualifying Patterson

12  as plaintiffs' damages expert at trial. While the motion seeks the same relief as the Noorda

13  defendants' motion in limine no. 1, the Nassiri defendants' motion sets for additional arguments in

14  support of the relief they seek. Specifically, the Nassiri defendants argue that Patterson is not

15  qualified to render an expert opinion because (1) he does not have any expert knowledge by way of

16  skill, experience, training or education that will help the jury understand the proposed evidence; (2)

17  Patterson's testimony is not based upon sufficient facts or data; and (3) Patterson's findings are not

18  based upon the product of reliable principles and methods.

19       Plaintiffs responded to the Nassiri defendants' motion. The court having reviewed the

20  arguments set forth in the Nassiri defendants' motion does not find any reason to amend its decision

21  that plaintiffs have met their burden by showing that Patterson's testimony is reliable by a

22  preponderance of the evidence and will not preclude his expert opinion at trial. This motion is

23  denied.

24       **I.**    **Nassiri defendants' motion in limine to preclude plaintiffs from presenting any**

25              **evidence at trial in support of its federal RICO claim (doc. # 509)**

26       The Nassiri defendants request that plaintiffs, counsel, employees, and witnesses be

27  precluded from presenting evidence in support of their federal RICO claim during trial because the

28

**James C. Mahan**
**U.S. District Judge**

1    statute of limitations had run on this claim by the time plaintiffs' brought this action. Plaintiffs

2    respond that this issue was already ruled on by the court in its order denying the Nassiri defendants'

3    motion for summary judgment (*see* doc. # 396). Further, plaintiff contends that the motion is vague

4    as to what evidence the Nassiri defendants are referring to as the same evidence used to support

5    plaintiffs' federal RICO claim will also be used to support its other claims

6          The court denies this motion. This issue has been before the court on more than one occasion

7    (*see* docs. # 396 & # 473). While the defendants contend that the district court erroneously denied

8    their motion for summary judgment by incorrectly applying the four-year statute of limitations to

9    plaintiffs' RICO claim, this contention has been rejected by this court. There is a triable issue of fact

10   of when Allstate knew or should have know about defendants' fraud. This is the same reason the

11   court denied the Nassiri defendants' motion for summary judgment–a factual issue remains.

12   **J.       Nassiri defendants' motion in limine to preclude any evidence concerning the**

13   **Nevada Chiropractic Physicians' Board's findings of fact and conclusions of law**

14   **(doc. # 510)**

15         This motion in limine is closely related to plaintiffs' motion requesting the court to take

16   judicial notice. (*See* doc. # 490). The Noorda defendants requests the court to preclude plaintiffs,

17   counsel, and witnesses from presenting evidence regarding the Nevada Chiropractic Physicians'

18   Board's findings against defendants. Defendants argue that none of the factual issues raised by the

19   board in its hearing involve any of the claimants involved in this litigation. Defendants contend that

20   the findings are merely administrative findings that are currently on appeal. The Nassiri defendants

21   also assert that the sole purpose to introduce the board's findings is to smear and discredit Nassiri

22   in front of the jury. *See* FED. R. EVID. 404(a)(1) and (b)(1). Last, defendants argue that the probative

23   value is outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403.

24         Plaintiffs retort that the board's findings are admissible to show motive, opportunity, intent,

25   preparation, plan, knowledge, identity, or absence of mistake or accident. *See* FED. R. EVID.

26   404(b)(2). The board's investigation found that Nassiri made improper referrals to facilities he

27   owned, and was not informing patients of his ownership interest; Nassiri was billing for treatments

28

James C. Mahan
U.S. District Judge

not rendered; and Nassiri was keeping two sets of records. Thus, plaintiffs argue that the board's findings are intended to support evidence that the Nassiri defendants created an elaborate scheme to bilk insurance carriers, like Allstate, out of money, with illegal referrals, improper billing, and unnecessary and unreasonable treatment.

The Ninth Circuit has held that evidence may be admitted pursuant to Fed. R. Evid. 404(b) if "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (citations omitted). If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403. *Id.* (citation omitted).

Here, the court finds that this is permissible character evidence under FRE 404(b). First, the board's findings tend to prove a material point in plaintiffs' action–that is, plaintiffs' allegations that Nassiri and other medical defendants were engaging in illegal self-referrals, improper billing and record keeping practices, and treatment that was not designed for the individual needs of the patient in attempts to inflate settlement amounts in claims made against Allstate and other insureds.

Second, the board's findings were made in December 2010, contemporaneously with this litigation. Third, the board's findings were following an investigation and several hearings at which Nassiri was represented by counsel. And fourth, the acts at issue in the board's findings are identical to the type of conduct at issue in plaintiffs' allegations. Further, the court finds that the probative value is not substantially outweighed by the prejudicial impact of these findings. Thus, this motion is denied.

**III.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Noorda defendants' motion in limine no. 1 to exclude Aaron Patterson as plaintiffs' damages expert (doc. # 494) be, and the same hereby is, DENIED consistent with section, II.A., *supra*.

**James C. Mahan**
**U.S. District Judge**

1    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 2 to preclude
2  plaintiffs from using deposition testimony of either Albert Noorda, M.D. or Diane Ruhl from
3  unrelated lawsuits (doc. # 495) be, and the same hereby is, DENIED consistent with section, II.B.,
4  *supra*.

5    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 3 to preclude
6  any reference to Albert Noorda, M.D. having an ownership interest in Maryland Medical Center,
7  LLC (doc. # 496) be, and the same hereby is, DENIED consistent with section, II.C., *supra*.

8    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 4 to preclude
9  an reference to Nevada Secretary of State and city of Las Vegas documents (doc. # 497) be, and the
10  same hereby is, GRANTED in part and DENIED in part consistent with section, II.D., *supra*.

11    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 5 to preclude
12  reference to illegal self-referrals (doc. # 498) be, and the same hereby is, DENIED consistent with
13  section, II.E., *supra*.

14    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 6 to preclude
15  plaintiffs from using speculative opinions from Diane Ruhl (doc. # 499) be, and the same hereby is,
16  DENIED as moot consistent with section, II.F., *supra*.

17    IT IS FURTHER ORDERED that the Noorda defendants' motion in limine no. 7 to preclude
18  any reference that medical treatment provided by Albert Noorda and Maryland Medical Center, LLC
19  was unreasonable or unnecessary (doc. # 500) be, and the same hereby is, DENIED consistent with
20  section, II.G., *supra*.

21    IT IS FURTHER ORDERED that the Nassiri defendants' motion in limine to preclude
22  plaintiff's damages expert, Aaron Patterson (doc. # 508) be, and the same hereby is, DENIED
23  consistent with section, II.H., *supra*.

24    IT IS FURTHER ORDERED that the Nassiri defendants' motion in limine to preclude
25  plaintiffs from presenting any evidence at trial in support of its federal RICO claims (doc. # 509) be,
26  and the same hereby is, DENIED consistent with section, II.I., *supra*.

27
28

**James C. Mahan**
**U.S. District Judge**

- 15 -

1     IT IS FURTHER ORDERED that the Nassiri defendants' motion in limine to preclude any

2 evidence concerning the Nevada Chiropractic Physicians' Board's findings of fact and conclusions

3 of law (doc. # 510) be, and the same hereby is, DENIED consistent with section, II.J., *supra*.

4     DATED May 30, 2013.

5

6

UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 16 -